Filed 5/20/16  Irish Beach Clusterhomes Assoc. v. Bertoli CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| IRISH BEACH CLUSTERHOMES ASSOCIATION,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CHRISTIAN BERTOLI et al.,<br><br>        Defendants and Respondents. | A142326<br><br>(Mendocino County<br>Super. Ct. No. SCUK-CVG-13-61986) |

Plaintiff and appellant Irish Beach Clusterhomes Association (the Association) appeals from the trial court's order sustaining the defendants' demurrer without leave to amend.  We reverse and remand.

BACKGROUND[1]

The Association is an unincorporated association that serves as the homeowners association for the Irish Beach Clusterhomes common interest development (the Development).  There are 16 lots in the Development.  Ten of the lots are undeveloped; these are owned by William Moores, Tona Moores, and Jessica Olsen.[2]  The Moores and Olsen are also the members of the Association's governing board (Board).  The

---

[1] Our recitation of the underlying facts assumes the truth of the allegations of the operative second amended complaint (complaint) and its attachments, and considers judicially noticeable facts.  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*); *Sarale v. Pacific Gas & Elec. Co.* (2010) 189 Cal.App.4th 225, 245.)

[2] The parties agree that Olsen is the Moores' daughter.

1

defendants are twelve individuals who own the Development's remaining six lots, all of which have a single family residence (the individual defendants), and the Irish Beach Clusterhomes Association, Inc., a California corporation (Irish Beach, Inc.) apparently formed by some or all of the individual defendants.[3]

Since 2003, the individual defendants have not fully paid assessments levied by the Association. In 2005, the Association's Board sued the individual defendants seeking payment of outstanding assessments. After a bench trial, the trial court held the Board's actions were invalid because, under the Development's covenants, conditions and restrictions (CCRs), only lots that had been improved with a home were entitled to vote. (*Irish Beach Clusterhomes Association Board of Governors v. Farrell* (Jan. 21, 2009, A120147) [nonpub. opn.].) On appeal, the resulting judgment was declared void on the ground that the Board was not a legal entity. (*Id.*) The Association paid for the legal fees incurred in this litigation through personal loans from its Board, the Moores and Olsen. In 2010, the Association hired a debt collection agency to collect delinquent assessments. Further litigation ensued. (See *JQD Inc. v. Irish Beach Clusterhomes Association* (Mar. 6, 2015, A138145) [nonpub. opn.]; *Bertoli v. Dennis* (Jan. 5, 2015, A137221) [nonpub.

_____

[3] We refer to the individual defendants and Irish Beach, Inc. collectively as defendants. The Association asks us to take judicial notice of a computer printout from the California Secretary of State website indicating the corporate status of defendant Irish Beach, Inc. was suspended at the time defendants' brief was filed. We grant this request for judicial notice but reject the Association's argument that we should strike the brief and grant the appeal as to that defendant "for lack of any opposition." Assuming we can take judicial notice of the Secretary of State website for the fact of a corporation's status, we sua sponte take judicial notice that the website currently shows the corporate status of Irish Beach, Inc., is no longer suspended. "[T]he revival of corporate powers retroactively validates any procedural steps taken on behalf of the corporation in the prosecution or defense of a lawsuit while the corporation was under suspension." (*Tabarrejo v. Superior Court* (2014) 232 Cal.App.4th 849, 862.) In any event, even if the brief were properly struck as to the corporate defendant, the "failure to file a respondent's brief does not mandate automatic reversal . . . . Instead, we examine the record and reverse only if prejudicial error is found." (*Petrosyan v. Prince Corp.* (2013) 223 Cal.App.4th 587, 593.) We deny as irrelevant the Association's October 7, 2015 request for judicial notice of a cross-complaint filed by one of the individual defendants in a prior lawsuit.

opn.].) In 2013, the individual defendants notified the Association and the Board of their intent to reconstitute the Development's homeowners association and prohibit the Board members from voting.

The Association then filed this lawsuit. The complaint asserts seven causes of action as follows: (1) declaratory relief providing that under the CCRs owners of undeveloped lots can vote in matters pertaining to the Development; (2) declaratory relief providing that the statute of limitations has expired on any claim the individual defendants might make against the Board members alleging that their personal loans to the Association constituted a breach of fiduciary duty; (3) declaratory relief providing that the Association "exists"; (4) declaratory relief providing that Irish Beach, Inc., was not properly created under the CCRs; (5) an injunction prohibiting the individual defendants from operating a "second board"; (6) an injunction directing the individual defendants to pay assessments levied by the Board; and (7) breach of equitable servitudes seeking damages for the outstanding assessments owed by the individual defendants.

Defendants filed a demurrer to the complaint. Defendants' primary argument was that the Association lacked the legal capacity to sue because "there is no lawfully elected Board of Governors." The trial court agreed and sustained the demurrer without leave to amend. The Association filed a motion for reconsideration, which the trial court denied. This appeal followed.[4]

DISCUSSION

"When reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied factual allegations. [Citation.] Courts must also consider judicially noticed matters. [Citation.] In addition, we give the complaint a reasonable interpretation, and read it in context. [Citation.] If the trial court has sustained the

---

[4] The appeal was taken from the order denying reconsideration and sustaining the demurrer, a nonappealable order. (*Gu v. BMW of North America, LLC* (2005) 132 Cal.App.4th 195, 202.) We construe the notice of appeal as applying to the subsequently filed judgment of dismissal. (*Id.* at pp. 202-203.)

3

demurrer, we determine whether the complaint states facts sufficient to state a cause of action. If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando, supra,* 31 Cal.4th at p. 1081.)

1. *Capacity*

A demurrer may be sustained on the ground that "[t]he person who filed the pleading does not have the legal capacity to sue." (Code Civ. Proc., § 430.10, subd. (b).) Defendants' argument below, which the trial court agreed with, was as follows: The CCRs provide the Board consists of five governors elected to two-year terms. Three governors constitutes a quorum. One of the governors must be elected solely by owners who are not subdividers. Pursuant to the allegations of the complaint, the governors now and during the 2005 litigation were the Moores and Olsen. The Moores are subdividers of the Development (the Association concedes this fact). Olsen is not a subdivider. However, Olsen owns only a one-third interest in one of the vacant lots; the remaining two-thirds are owned by the Moores.[5] Under the CCRs, each lot gets one vote and, according to defendants, the co-owners of jointly owned lots must vote "in unison" with each other. Because Olsen could not have elected herself into office without the consent of the Moores, she could not have been elected solely by owners who are not subdividers. Defendants conclude "there is no three governor quorum because Olsen was never legally elected"; "[w]ithout a quorum, the Board has no power to conduct business" and cannot lawfully vote to file this lawsuit; and the Association therefore lacks capacity to sue.

Assuming, without deciding, defendants' legal analysis and interpretation of the CCRs is correct, in reviewing a demurrer order we are confined to the facts alleged in the complaint, documents attached to the complaint, and judicially noticeable facts.

---

[5] In support of this fact, defendants requested judicial notice of a 2004 grant deed.

(*Schifando, supra,* 31 Cal.4th at p. 1081.)  Defendants' argument hinges on the fact that *only* the Moores and Olsen cast votes when Olsen was elected to the Board (as opposed to other non-subdivider owners)—a fact that does not appear in the complaint, its attachments, or any judicially noticeable documents.  The record does contain the minutes from a 2004 election at which Olsen was apparently first elected to the Board, which had been filed in a prior lawsuit.  Although counsel for the Association agreed, at the hearing on reconsideration, that the trial court could take judicial notice of the minutes, counsel also noted judicial notice of such a record was generally taken only of the fact that the document had been filed.

We need not decide whether the trial court properly considered the contents of the 2004 minutes because the document is irrelevant to the question of who voted for Olsen when she was elected to her *current* term as governor—as noted above, Board members are elected to two-year terms under the CCRs.  Whether Olsen was properly on the Board from 2004 to 2006 has no bearing on the question of the Association's *present* capacity to maintain this lawsuit.  At oral argument in this court, defendants' counsel argued that counsel for the Association conceded below that the only people voting for Olsen in elections from 2008 onward were the Moores and Olsen.  In fact, counsel for the Association argued below at the hearing on the motion for reconsideration that the trial court's demurrer ruling "rests on the assumption that there never was a proper vote.  That in 2006, '08, '10, and '12, the only people that voted for Olsen were [the] Moores and Olsen."  Counsel continued, "any [of the] defendants could have voted at any election.  In 2006, '08, '10, and '12.  There's nothing to indicate that they didn't except [defendant's counsel] saying they didn't.  There's no evidence presented showing that they didn't vote."  Later, counsel did say, "I'm not confident that we would be able to amend the complaint to say that after 2004, maybe in 2006 -- I don't know off the top of my head and I apologize.  But from 2008 probably on, it very likely was just Moores, Moores, and Olsen."  We decline to construe this equivocal statement regarding the ability to amend the complaint as a binding evidentiary admission, particularly in light of counsel's prior argument that there was no such evidence.  Because there was no evidence of the

5

Association's present capacity to maintain the lawsuit, the trial court erred in sustaining defendants' demurrer on the ground that the Association lacks the capacity to sue.

2. *Alternate Grounds*

Defendants contend we can affirm the demurrer order in part on alternative grounds raised below. We disagree.

Defendants argue the second cause of action—seeking declaratory relief as to the statute of limitations for a breach of fiduciary duty claim—is frivolous because the statute of limitations for such a claim can "readily be found in statutes and case law." However, the Association contends the parties' dispute is over when the statute of limitations *began* to run, and defendants do not contend there is no dispute over this issue.[6]

Defendants contend the Association lacks the capacity to bring the seventh cause of action—seeking damages for unpaid assessments—because, since the assessments were levied to repay loans from Board members, the entire Board had a conflict of interest barring them from authorizing the lawsuit. Assuming that such a conflict deprives the Association of the capacity to sue, we reject this argument. First, contracts or transactions approved by votes involving an interested director are not void if it is shown the contract or transaction "was just and reasonable as to the corporation at the time it was authorized, approved or ratified." (Corp. Code, § 7233, subd. (a)(3); *Harvey v. Landing Homeowners Assn.* (2008) 162 Cal.App.4th 809, 823–824; see also Civ. Code, §§ 4080, 5350, subd. (a) [Corp. Code § 7233 applies to "any contract or other transaction authorized, approved, or ratified by the board" of an unincorporated common interest development association].) This is a question of fact not resolved by the pleadings. Second, the complaint alleges the individual defendants stopped consistently paying assessments in 2003, before the 2005 litigation for which Board members loaned the

---

[6] Although the Association failed to raise this issue in its opening brief, we decline to exercise our discretion to treat the issue as waived. Defendants discussed the claim in their response brief and the parties' arguments were fully discussed in their briefs below. Accordingly, defendants "cannot reasonably claim prejudice from our consideration" of the issue. (*Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1122 [declining to treat as waived argument not raised in opening brief].)

6

Association money.  Therefore, it is not established that all of the unpaid assessments sought by the Association are to repay money loaned by Board members.

## DISPOSITION

The order sustaining defendants' demurrer is reversed and the matter is remanded for further proceedings.  The Association is awarded its costs on appeal.

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

BRUINIERS, J.

(A142326)

8